## N. Y. SUPERIOR COURT.

### HENRY LEE agt. MARY LEE.

*Action to annul a marriage — Alimony and counsel fees allowed in such class of actions.*

Title 1, chapter 15 of the Code of Civil Procedure, does not change articles 1, 2, 3, 4 and 5 of title 1, chapter 8, part 2 of the Revised Statutes, and as alimony and counsel fees were allowed in an action to annul a marriage while those portions of the Revised Statutes were in force,

that power still continues under the Code of Civil Procedure (*Henkel* agt. *Henkel, special term decision of this court,* INGRAHAM, *J., decided in November,* 1883, *not followed; Sullivan* agt. *Sullivan, special term, decision of this court,* O'GORMAN, *J., decided in October,* 1883, *followed*).

*Special Term, December,* 1883.

MOTION for alimony and counsel fee by the defendant, who is the wife of the plaintiff.

Henry Lee brought this action against Mary Lee "to annul and declare void their marriage," upon the alleged ground of "fraud, force and duress" on the part of the wife. The answer admits the marriage, but denies the alleged "fraud, force and duress."

*J. C. Julius Langbein,* of counsel for the defendant and in support of the motion, made and argued the following points : First. Under the issues raised by the complaint and answer, irrespective of the moving papers, the wife is entitled to alimony and counsel fee *pendente lite.* The motion is resisted on the broad ground of want of jurisdiction in the courts to grant the relief asked for in an action of this character, and to sustain this position the plaintiff's attorney relies on two cases, viz., *Ramsden* agt. *Ramsden* (28 *Hun*, 285), affirmed by the court of appeals in 91 *New York*, 281, and *Henkel* agt. *Henkel* (*special term decision of this court,* INGRAHAM, *J., filed November* 26, 1883). It is respectfully submitted that the *Ramsden case* is not in point, and that the *Henkel case* is in conflict with *Sullivan* agt. *Sullivan,* heard before O'GORMAN, J., and decided by him October 24, 1883. If *Henkel* agt. *Henkel* is good law the courts will soon be flooded with actions brought by husbands against their wives upon the ground of "force, fraud and duress," and yet no relief be afforded the wife in the nature of alimony and counsel fee to enable her to exist, and particularly to defend the action brought against her. Lawyers will refuse to defend the wife, or reputed wife, unless the husband, or reputed husband, is at least compelled to pay a counsel fee pending the

Lee agt. Lee.

action.    There was no power in the courts to allow alimony
and counsel fee in the *Ramsden case*, because no such action
as was brought in that case is known to the law.    Judge
DANIELS, who writes the opinion at the general term, says:
" The action has not in general terms been brought either for
an absolute divorce or a separation of these parties, but its
object as stated in the complaint is ' to obligate the defend-
ant to pay to the plaintiff a certain sum for her mainte-
nance and support sufficient to enable her to live and maintain
her proper condition in life as the lawful wife of the defend-
ant.' "    *    *    *    And judge DANFORTH, in writing the
opinion, says: " The difficulty of the plaintiff's case is that
the action brought by her is not such an action as the statute
authorizes.    It is not an action to procure a judgment of sepa-
ration.    No separation is asked for, and it is apparent that the
omission in this respect was intentional.    The plaintiff seeks
maintenance and support, nothing more."    *    *    *    In other
words, these judges say that no such action is allowed by law.
But the *Henkel case* and this case are actions allowed by
law, and therefore the *Ramsden case* does not apply to these
cases, so that the decision of judge INGRAHAM in the *Henkel
case* must have been based on some other ground.    In a short
memorandum of opinion the judge gives the reason.    He
says: " This action is to avoid a marriage not for a divorce.
Motion denied, no costs."    But with all respect to the learned
justice it is respectfully submitted that because the action is
brought to avoid a marriage is no reason why alimony and
counsel fee should not be granted.    The only cases reported
in the books where alimony and counsel fee was refused in an
action for nullity of marriage are *Bartlett* agt. *Bartlett* (1
*Clark's Ch.*, 322) ; *Bloodgood* agt. *Bloodgood* (59 *How.*, 42).
Both of these actions were brought by the wife against the
husband.    The first case has never been followed, and in
the second the court denies the motion on the ground
that the wife is the plaintiff, but states distinctly that if
the action had been brought by the husband it would have

followed the case of *North* agt. *North*, which will be here-after referred to. *Bartlett* agt. *Bartlett* has never been followed, neither has *Bloodgood* agt. *Bloodgood*. Vice-chancellor Whittelsey, in the case of *Bartlett* agt. *Bartlett*, denied the wife's motion for alimony and counsel fee in a case where all his sympathies from the facts were against the application, and held that the statute applied only to cases of suits for divorces or for separations. No other judge or court has ever followed him except in *Bloodgood* agt. *Bloodgood*, and as already shown, the judge in that case would have granted the motion had it been made in an action brought by the husband. A careful review and proper criticism of the *Bartlett case* will be found in the case of *Allen* agt. *Allen* (59 *How.*, 30, &c.). In *Allen* agt. *Allen* which was a suit brought by the wife, the husband was adjudged guilty of contempt for non-payment of alimony and counsel fee ordered, and locked up in jail, and on a motion for his release it was denied and an opinion written by judge Daniels (*See this case reported in* 8 *Abb. N. C.*, 175, &c.; *also* 58 *How.*, 381). The case of *North* agt. *North* (1 *Barb.*, 241), decided by chancellor Walworth in 1845, after the case of Bartlett disposes of the erroneous reasoning of the vice-chancellor, and has been followed ever since and is good law to-day. Judge Ingraham's attention could not have been drawn to this case or the cases which follow it. If it had, it is fair to say the learned judge would have said something about it or in relation thereto. In that case the bill was filed by the husband to annul his marriage with the defendant and she made the motion for alimony and counsel fee, so that the case is on all fours with ours. The chancellor says: "For the purposes of this application the fact of the marriage is admitted, and the presumption is that it was legal until the contrary shall have been established by the proofs in the cause." The chancellor then shows the difference and the reason for it when the wife is the complainant, and puts it upon the ground that in such a case the allegations by her of the illegal marriage will be taken as

true as against herself, but where the husband files a bill against his wife, admitting that he was in fact married to her, but which marriage he alleges to have been illegal and void, the wife is entitled to alimony and counsel fee at least until the truth or falsehood of his bill can be ascertained on the trial. The chancellor then says (and this is the main point in the case): "It is true the provision of the Revised Statutes, on the subject of an allowance to the wife to enable her to carry on the suit is confined to suits brought for a divorce or a separation, and does not in terms extend to the allowance of *ad interim* alimony, even in those cases (2 *R. S.*, 148, *sec.* 56.) But by referring to the revised note to that provision, it will be seen that the allowance does not depend wholly upon the statute but upon the practice of the court as it previously existed. And even subsequently to that statute this court has continued to allow *ad interim* alimony in matrimonial cases, in the same manner as before. AYLIFFE says a husband, regularly speaking, is bound to allow his wife alimony pending the suit, whatever the cause may be. POYNTER also lays down the rule generally, that in all suits of divorce, or suits for the restitution of conjugal rights, or in suits of nullity, if the nullity be promoted by the husband, as soon as the court is judicially informed that a fact of marriage has taken place, it is competent for the wife to apply for alimony pending the suit." * * * This case has been followed in *Ford* agt. *Ford* (10 *Abb.* [*N. S.*], 74, 78 ; *see language of judge* MORRELL *at page* 78 *referring to the North Case ; S. C.*, 41 *How.*, 169, 172) ; *Allen* agt. *Allen* (59 *How.*, 27) ; *Bloodgood* agt. *Bloodgood* (59 *How.*, 42, 43), and it is recited and applied in *Brinkley* agt. *Brinkley* (50 *N. Y.*, 184, 190). In *Griffin* agt. *Griffin* (47 *N. Y.*, 135) the court said, at page 136 : It is conceded that there is no statute, in terms authorizing the order, and that if sustained, it must rest upon the incidental powers formerly vested in the court of chancery in cases of this description, and to which the supreme court has succeeded. On page 137 the court says : "It has been the constant prac-

tice of the court of chancery, both before and since the Revised
Statutes to make equitable provision for all these matters, and
in so doing it has been guided by the decisions of the ecclesi-
astical court of England in similar cases" (*See Allen* agt.
*Allen*, 59 *How.*, 39, *&c.*). In the *Brinkley case* (page 193)
judge FOLGER says, after citing numerous authorities: "At
all events, the authorities cited are ample to sustain this
proposition; that where there has been a marriage in fact,
though its commencement was not according to the decent
and recognized forms and ceremonies usual in society, and
which, though not indispensable for its validity, are yet sanc-
tioned by law; in an action by the wife for divorce, or by the
husband for a decree that the marriage is null, in which the
putative wife avers the existence and legality of the marriage,
though the alleged husband denies it; the court may, in its dis-
cretion allow to the putative wife temporary alimony and money
to carry on the action from the means of the alleged husband."
The court is asked to read the language of judge FOLGER
on the same page, as to the principle involved in this
language.    At page 200, judge FOLGER says: "And though
the statute (referring to the Revised Statutes) does not, in
terms, give to the court the same power as to an allowance
for her support and maintenance pending the controversy,
yet this power is based upon the general equitable juris-
diction of the court, and upon the ground that when the
statute conferred jurisdiction upon the court in those actions
for divorce, which, by the English law, are solely cognizable
in the ecclesiastical courts, the grant of that jurisdiction
carried with it, *by implication*, the incidental powers which
were indispensable to its propor exercise, and not in conflict
with our own statutory relations on the same subject (*see
Griffin* agt. *Griffin*, 47 *N. Y.*, 134), where this subject is
elaborately considered." In *Kinsey* agt. *Kinsey* (7 *Daly*,
460), which was an action by a husband against his wife to
annul the marriage, the rule was laid down as follows, follow-
ing the ruling in the *Brinkley case*, "that alimony would

not be allowed, unless the existence of the material relation be proven to the satisfaction of the court, for the right to alimony depends upon that relation." Thus showing that when such a fact is presumptively proven (see answer in this case admitting the marriage) alimony and counsel fee will be granted, and, also, that there is ample power in the court to do so. As has already been shown in the *North case* (*at page* 244), chancellor WALWORTH says that, "by referring to the reviser's notes it will be seen that the allowance does not depend wholly upon the statute, but upon the practice of the court, as it previously existed." If the Revised Statutes were not in conflict with the incidental powers of the court as stated by judge FOLGER in the *Brinkley case*, the Code of Civil Procedure (*sec.* 1769), which takes its place (*sec.* 58 *of the Revised Statutes*), certainly is not, and if this is so, the power is still vested in the court as heretofore. The allowance still does not, therefore, depend wholly upon the Code of Civil Procedure, but upon the practice of the court as it previously existed. Mr. Throop, in his note to this section, says that it is section 58 of the Revised Statutes extended, and that " it is believed that the section is so framed as not to affect the disposition, either rightly or erroneously, of such extraordinary cases as *Brinkley* agt. *Brinkley* (50 *N. Y.*, 174) ; and *Anonymous* (15 *Abb.* [*N. S.*], 307). The *Brinkley case* has already been noticed, and in the other case *Anonymous*, we find not only aids us considerably in our position, but the language of the court is directly in point, both in the law and as matter of judicial discretion. Judge DAVIS in that case says : " The court is authorized in every suit brought for divorce, or separation, to require the husband to pay a suitable sum to enable the wife to carry on the suit. No distinction is made between a suit for divorce upon the ground of nullity of the marriage, or for any other cause, all are denominated divorces or separation." In that case the third wife applied for leave to intervene as a party to enable her to protect her right, and for alimony and counsel

fee. The action was brought by the husband to annul a marriage. Alimony was denied the third wife on the ground that she was not a party to the action, but counsel fees were allowed her. The court said, at page 310 : " In this effort she is plainly entitled to have the services of counsel, and it is obviously proper that the plaintiff, who has placed himself in the relation of husband to her, in fact, should pay for the service which his act has made necessary. It is a part of the burden and expense which the law casts upon him. He seeks to show that this lady is not his wife." * * * " Having assumed the obligations of a husband he ought to be held to the rule imposing the burdens of a husband, at least, until he establishes the fact that he is not. If she was still a party to the present suit, she would be entitled to both alimony and counsel fee." With regard to the question under consideration,viz., the power of the court to grant alimony and counsel fee in actions to annul a marriage, there is practically no difference between the Revised Statutes and the Code of Civil Procedure (*See Allen* agt. *Allen*, 59 *How.*, 30). The Revised Statutes read (*chap.* 8) : Of the domestic relations. The Code of Civil Procedure reads (*chap.* 15): Special provisions regulating other particular actions and right of action, and actions by or against particular parties. Title 1, " Matrimonial actions." Under the Revised Statutes, title 1 read, " Of husband and wife." These two titles or headings do not conflict, they both relate to marriage. The other titles of the Revised Statutes, under chapter 8, are as follows : Title 2. Of parents and children. Title 3. Of guardians and wards. Title 4. Of masters, apprentices and servants. The other titles of the Code of Civil Procedure (*chap.* 15), are as follows : Title 2. Actions relating to a corporation. Title 3. Actions relating to the estate of a decedent. Title 4. Other special actions and rights of action. Title 5. Other actions by or against particular parties. Under the Revised Statutes (*title* 1), headed. " Of husband and wife," has seven articles. Under the second, under which our cause of action comes, is headed

" Of divorces on the ground of nullity of the marriage contract." Under the Code of Civil Procedure (*title* 1), is headed " Matrimonial actions," has four articles, under the first of which our cause of action comes. It is headed "Action to annul a void or voidable marriage." These headings or titles are identical; they certainly do not conflict; while as to the other titles in both the Revised Statutes and the Code of Civil Procedure, other matters are contained, not relating to either " husband and wife," or " matrimonial actions." Section 1743 of the Code of Civil Procedure, (*subdivision* 4), takes the place of section 33 (*sec.* 20), subdivision 4 of the Revised Statutes, which read : 4. That the consent of one of the parties was obtained by force or fraud. While subdivision 4 of section 1743 reads : 4. That the consent of one of the parties was obtained by force, duress or fraud. The change consists in the addition of the word " duress." Following out this line of reasoning, the court will see that we come out the same as the practice previously existed, and that the court had the power now contended for. We first take the Revised Statutes, article fifth : General provisions applicable to the last two articles. What are the last two articles? Why, three and four, what are they? Article third : Of divorces, dissolving the marriage contract. Article fourth : Of separations or limited divorces. Section 57 of this article fifth reads as follows : " If a married woman, at the time of exhibiting a bill against her husband, under the provisions of either of the last two articles, she reside in this state, she shall be deemed an inhabitant thereof, although her husband may reside elsewhere." Section 58 reads as follows : " In every suit brought, either for a divorce or for a separation, the court may, in its discretion, require the husband to pay any sums necessary to enable the wife to carry on the suit during its pendency; and it may decree costs against either party and award execution for the same, or it may direct such costs to be paid out of any property sequestrated, or in the power of the court or in the hands of a receiver."

Lee agt. Lee.

We now take the Code of Civil Procedure and see what has become of article 5 and these two sections 57 and 58. Article fourth: Provisions applicable to two or more of the actions specified in this title. Section 1768, which takes the place of section 57, reads as follows: Section 1768. If a married woman dwells within the state when she commences an action against her husband, as prescribed in either of the last two articles, she is deemed a resident thereof, although her husband resides elsewhere." Section 1769, which, as has already been shown, takes the place of section 58, reads as follows: "Section 1769. Where an action is brought, as prescribed in either of the last two articles, the court may, in its discretion during the pendency thereof from time to time, make and modify an order or orders requiring the husband to pay any sum or sums of money necessary to enable the wife to carry on or defend the action, or to provide suitably for the education and maintenance of the children of the marriage or for the support of the wife, having regard to the circumstances of the respective parties. The final judgment in such an action may award costs in favor of or against either party, and an execution may be issued for the collection thereof as in an ordinary case, or the court may, in the judgment or by an order made at any time, direct the costs to be paid out of any property sequestrated or otherwise in the power of the court." Now, what are the last two articles referred to in these two sections? Why, two and three, what are they? Article second: Action for a divorce. Article third: Action for a separation. Precisely the same as in the Revised Statutes, and yet in neither there nor in the Code of Civil Procedure is it expressly or otherwise prohibited for the courts not to grant alimony and counsel fee in any of the actions mentioned, either in the other articles of the Revised Statutes, either three and four, or in the articles in the Code of Civil Procedure two and three. Nowhere does it say that the court may not or must not do so, and therefore the *North* agt. *North* and the *Brinkley* agt. *Brinkley*, and the other cases cited, are

Lee agt. Lee.

good law to this day even under the Code of Civil Procedure. Thus, to sum the question up in a few words, we find that in England the ecclesiastical courts had power under the common law in actions to annul a marriage, and actions of that nature, to grant or refuse alimony and counsel fee. This general equitable jurisdiction was vested in our court of chancery, and in turn in our supreme court, irrespective of any statute law, and the power to grant or refuse alimony and counsel fee in such actions was carried with it as indispensable to the proper exercise of justice by the court in such case. No power was vested in the ecclesiastical courts either by the common law or by statute in actions for divorce upon the ground of adultery nor for separation, and consequently no such power could be vested in our court of chancery unless specially conferred by statute through our legislature, so that when our statutes were passed authorizing divorces in these class of cases, provision was thereby expressly made vesting the court with power by express words to grant alimony and counsel fee, as has already been shown by section 58 of the Revised Statutes and by section 1769 of the Code of Civil Procedure. But in actions to annul a marriage, and those of that nature, the court of chancery having already that power by the common law, it was not necessary to expressly, by statute, vest them with a power they already had, at least none has since been expressly given to the court. Neither has it, expressly or otherwise, been taken away. By Rule 86 of the General Rules of Practice, " in case where no provision is made by statute or by these rules the proceedings shall be according to the customary practice as it formerly existed in the court of chancery or supreme court in cases not provided by statute or by the written rules of these courts. Where its own rules do not cover the case the court follows the practice of the king's bench in England (*Dubois* agt. *Philips*, 5 *Johns.*, 235 : *Miller* agt. *Stettiner*, 7 *Bosw.*, 695 ; *S. C.*, 22 *How.*, 518). And, hence, judge FOLGER appropriately says in the *Brinkley case*, referring to the *Griffin case*, that " the

grant of that jurisdiction (referring to the chancery court, to which the supreme court has succeeded) carried with it by implication the incidental powers which were indispensable to its proper exercise and not in conflict with our own statutory regulations on the same subject." Second. The court having the power to grant alimony and counsel fee in an action of this character (particularly where the husband is plaintiff) the defendant's motion should be granted and alimony and counsel fee allowed her at least until the court or jury have pronounced her not to be the wife of the plaintiff. 1st. The plaintiff by bringing the suit thereby admits that the defendant is his reputed wife to say the least. 2d. She admits the marriage in her answer. The existence of the marital relation by the pleadings alone is therefore proven to the satisfaction of the court (*See Kinsey* agt. *Kinsey, supra*). 3d. The defendant in her petition swears that the marriage set forth in the complaint was solemnized in the presence of one John McCormack. 4th. John McCormack, in an affidavit annexed to the petition, swears that he is a police officer attached to the Tombs police court; that he arrested the plaintiff on a warrant charging him, upon complaint of the defendant, with bastardy, and that while in his custody under said warrant the plaintiff asked him whether by marrying the girl (meaning the defendant in the action) "he could get out of the scrape," and upon receiving an affirmative answer he at his own request was taken to her residence. The officer ends his affidavit with the following forcible language: "Nothing showing or tending to show fraud or force was used by the defendant, as I was present and heard all the conversation between them, and said plaintiff informed me "that he married her of his own volition." 5th. In addition to all this the defendant swears she was delivered of a child of which the plaintiff is the father. 1st. By this marriage, therefore, he got out of the scrape, which consisted of seduction and bastardy, two serious criminal charges. 2d. The bastard child was thereby made legitimate. This then constitutes the alleged "fraud, force

Lee agt. Lee.

or duress." The plaintiff was in the strong clutches of the law upon a serious criminal charge; he certainly was morally bound to marry the defendant whom he had seduced and gotten with child out of lawful wedlock, and to avoid the legal consequences of his wrongful acts he voluntarily (though under the terror of the law) married the girl, and now he asks a court of equity to set aside the marriage and free him from his own voluntary act. The court may do so when the allegation of his complaint have been found to be true after a trial on the merits, but in the meanwhile surely the court will not refuse this defendant alimony and counsel fee, the one for the support and maintenance of herself and her child, the other to enable her to defend the action which under such circumstances the plaintiff has brought against her.

*Rufus F. Andrews*, attorney for the plaintiff, in opposition to the motion, claimed that the only provision made by law for the granting of alimony to a wife is made under section 1769 of the Code of Civil Procedure. This provides for granting alimony and counsel fee under articles 2 and 3 of title 1 of chapter 15 of the Code. Actions under these articles are for absolute and limited divorce and not for anything else. This action is to annul a marriage for fraud and is under article 1 of the same title and chapter, and cited the cases of *Ramsden* agt. *Ramsden* (2 *N. Y. Civil Code Reporter*, 416); *S. C.* (28 *Hun*, 285; *affirmed in* 91 *N. Y.*, 281), and *Henkel* agt. *Henkel* (*special term*, INGRAHAM, *J.*, *November*, 1883).

TRUAX, *J.* — Title 1 of chapter 15 of the Code of Civil Procedure is substantially the same as articles 1, 2, 3, 4 and 5, of title 1, chapter 8, part 2, of the Revised Statutes. Alimony and counsel fee were allowed the wife in an action to annul a marriage, and when the action was brought by the husband while those portions of the Revised Statutes were in force. In *North* agt. *North* (1 *Barb. Ch.*, 241), the

chancellor said : " The provisions of the Revised Statutes are the subject of allowance to the wife to enable her to carry on the suit is confined to suits brought for a divorce or separation, and does not in terms extend to the allowance of *ad interim* alimony even in those cases. But the allowance does not depend wholly upon the statute, but upon the practice of the court as it existed prior to the enactment of the Revised Statutes." This case was cited with approval by the court of appeals in *Griffin* agt. *Same* (47 *N. Y.*, 137), and *Brinkley* agt. *Same* (50 *N. Y.*, 190). In the last case the principle upon which alimony and counsel fee were allowed was stated as follows : " When an actual marital relation has been admitted or shown, and its existence in law is sought to be avoided by some facts set up by the husband, and it devolves upon him to show that fact, alimony will be granted until that fact is shown."

Alimony of five dollars per week and a counsel fee of twenty-five dollars is awarded.